Jordan K. Merson, Esq., (To Be Admitted *Pro Hac Vice*)
jmerson@mersonlaw.com
Jordan K. Rutsky, Esq., (To Be Admitted *Pro Hac Vice*)
jrutsky@mersonlaw.com
Nathan E. Werksman, Esq., NV bar No. 15117
nwerksman@mersonlaw.com
Alice A. Bohn, Esq., (To Be Admitted *Pro Hac Vice*)
abohn@mersonlaw.com
Manraj S. Sekhon, Esq., (To Be Admitted *Pro Hac Vice*)
msekhon@mersonlaw.com
**Merson Law, PLLC.**
950 Third Ave, 18th Floor
New York, NY 10022

Brian J. Panish, Esq., NV bar No. 16123
panish@psbr.law
Rahul Ravipudi, Esq., NV bar No. 14750
ravipudi@psbr.law
Robert Glassman Esq., To Be Admitted *Pro Hac Vice*
rglassman@psbr.law
**Panish, Shea, Boyle, Ravipudi LLP.**
300 South Fourth Street, Suite 710
Las Vegas, NV 89101
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| LISE LOTTE-LUBLIN, LILI BERNARD, JANICE BAKER-KINNEY, REBECCA COOPER, LINDA KIRKPATRICK, JANICE DICKINSON, ANGELA LESLIE, PAM JOY ABEYTA, AND HEIDI THOMAS,<br><br>        Plaintiffs,<br><br>    vs.<br><br>WILLIAM COSBY, JR.,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

1

## INTRODUCTION

Plaintiffs Lise Lotte-Lublin, Lili Bernard, Janice Baker-Kinney, Rebecca Cooper, Linda Kirkpatrick, Janice Dickinson, Angela Leslie, Pam Joy Abeyta, and Heidi Thomas (hereinafter jointly referred to as "Plaintiffs"), by and through their attorneys, Merson Law, PLLC, and Panish Shea, Boyle, Ravipudi, LLP, respectfully allege as follows:

## JURISDICTION, VENUE, AND INTERDISTRICT ASSIGNMENT

1. Plaintiff Lise Lotte-Lublin resides in Las Vegas, Nevada.

2. Plaintiff Lili Bernard resides in Los Angeles, California.

3. Plaintiff Janice Baker-Kinney resides in Rohnert Park, California.

4. Plaintiff Rebecca Cooper resides in Las Vegas, Nevada.

5. Plaintiff Janice Dickinson resides in Tarzana, California.

6. Plaintiff Linda Kirkpatrick resides in Mesa, Arizona.

7. Plaintiff Angela Leslie resides in Theodore, Alabama.

8. Plaintiff Pam Joy Abeyta resides in Atwater, California.

9. Plaintiff Heidi Thomas resides in Castle Rock, Colorado.

10. Defendant William Cosby resides at 8210 New Second Street, Elkins Park, Pennsylvania, 01370.

11. This Court has jurisdiction under 28 U.S.C. § 1332.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

13.     Venue in the Southern Division of the United States District Court, District of Nevada is proper under Rule 1-6 of the Local Rules of Practice for the District of Nevada because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

14.     The Plaintiffs bring this action under Nevada Revised Statues, Chapter 11; Added by 2023 Nev. SB 129, § 1, which eliminated the statute of limitations for a victim of a sexual assault to commence an action against the alleged perpetrator for damages arising from sexual abuse.

GENERAL FACTUAL ALLEGATIONS

15.     For decades, defendant Cosby engaged in the serial sexual assault of dozens of women for his sexual gratification by drugging women and using unknown substances to incapacitate them.

16.     Each Plaintiff was sexually battered, assaulted, and abused by defendant Cosby in the same or similar manner, as a part of the same conduct, occurrence, plan, or scheme that was perpetrated, conducted, organized, and/or performed in Nevada by defendant Cosby.

17.     All these sexual assaults and batteries took place in a similar manner between approximately 1979 and 1992 in Nevada. Several of the incidents took place in Cosby's suite in the same Las Vegas hotel.

18.     For each of these Plaintiffs, defendant Cosby used his enormous power, fame, and prestige, and claimed interest in helping them and/or their careers as a pretense to isolate and sexually assault them.

19.    Defendant Cosby drugged or attempted to drug each of these women before sexually assaulting them.

20.    In a deposition filed in the Eastern District of Pennsylvania, defendant Cosby admitted to obtaining drugs to use on women with whom he wanted to engage in sex.

21.    Now, these Plaintiffs have come forward to stand up for themselves, after they were sexually abused and assaulted by defendant Cosby.

22.    In performing the sexual assaults and batteries set forth above, Defendant Cosby committed multiple torts, including, but not limited to, sexual assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment pursuant to Nevada law, including Nevada Revised Statues, Chapter 11; Added by 2023 Nev. SB 129, § 1.

### PLAINTIFF LISE LOTTE-LUBLIN

23.    In or around 1989, Ms. Lublin met Cosby at Cosby's request, under the pretense that he wanted to mentor her and her career.

24.    Following their initial meeting, Ms. Lublin met with Cosby multiple times for mentoring during which Cosby acted interested in Ms. Lublin's career development as a model and actress.

25.    On one such occasion, in or around 1989, Cosby invited Ms. Lublin to his hotel suite in Las Vegas, Nevada, under the pretense that he wanted to assess her acting skills.

26.     During the mentoring session in Cosby's suite, Cosby provided Ms. Lublin with two beverages and instructed her to drink the beverages to help her relax and improvise more effectively.

27.     Ms. Lublin drank the beverages at Cosby's direction.

28.     Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverages, without Ms. Lublin's knowledge or consent, prior to giving the beverages to Ms. Lublin.

29.     After drinking the beverages, Ms. Lublin felt dizzy and became incapable of moving of her own volition.

30.     As Ms. Lublin began to feel the effects of the beverages, Cosby grabbed her wrists, pulled her between his legs, and held her in place with his legs. He then began stroking Ms. Lublin's hair while masturbating.

31.     Once incapacitated, Cosby dragged Ms. Lublin to the bedroom of the suite.

32.     While incapacitated, Ms. Lublin felt forcible vaginal pressure and penetration from Cosby's hand and fingers.

33.     Once Cosby had isolated and incapacitated Ms. Lublin, Cosby engaged in sexual acts with Ms. Lublin, including penetration, without her consent and against her will.

34.     Ms. Lublin did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

35.     Cosby knew or should have known that Ms. Lublin was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF LILI BERNARD

36.     Beginning in or around 1990, Cosby acted as Ms. Bernard's mentor for her acting career.

37.     In or around the Fall of 1990, Cosby arranged for and induced Ms. Bernard to travel interstate from New York to Nevada under the pretense that he was arranging a meeting between Ms. Bernard and producers from *A Different World* to cast her in the show.

38.     Once in Las Vegas, Nevada, Cosby told Ms. Bernard that the producers could not attend the meeting but offered to engage in a mentoring session in his hotel suite.

39.     Cosby offered and provided Ms. Bernard with a beverage that he claimed was non-alcoholic sparkling cider to celebrate her future success as an actress.

40.     Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Bernard's knowledge or consent, prior to giving the beverage to Ms. Bernard.

41.     When Ms. Bernard drank the beverage, Cosby, in a joking manner, encouraged her to drink faster and forcibly tilted the glass as she brought it to her mouth to ensure that she drank quickly and fully from the beverage.

42.     Shortly after drinking the beverage, Ms. Bernard felt dizzy, disoriented, and giddy.

43.     Because of the effects of the beverage, Ms. Bernard fell while in the suite.

44.     After falling, Ms. Bernard was unable to move and lost consciousness because of the effects of the beverage.

45.     When Ms. Bernard awoke, she was naked, lying on her back, and had difficulty moving. Cosby was naked by her feet.

46.     Ms. Bernard told Cosby that she did not want to have sex and cried out for help.

47.     Despite her pleas, Cosby raped her by penetrating her vagina with his penis.

48.     Ms. Bernard attempted to fight off Cosby during the rape but was unable to stop him because of the effects of the beverage he had provided to her earlier that evening.

49.     To silence Ms. Bernard's protests, Cosby placed a pillow over her face, preventing Ms. Bernard from breathing.

50.     After removing his penis from Ms. Bernard's vagina and ejaculating on Ms. Bernard, Cosby removed the pillow from Ms. Bernard's face. Ms. Bernard remained incapacitated by the beverage and lost consciousness again.

51.     When Ms. Bernard next awoke, she was still incapacitated, and Cosby, who was naked, was cleaning Ms. Bernard with a wet towel.

52.     When Ms. Bernard awoke again, it was morning and Cosby was gone.

53.     Cosby engaged in sexual acts with Ms. Bernard, including penetration, without her consent and against her will.

54.     Ms. Bernard did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

55.     Cosby knew or should have known that Ms. Bernard was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF JANICE BAKER-KINNEY

56.     In or around 1982, Ms. Baker-Kinney was invited by her co-worker to a party that Cosby was hosting in a private home in Reno, Nevada.

57.     Upon arrival at the home with her co-worker, Ms. Baker-Kinney discovered that there was no party, and Cosby was alone.

58.     With only Ms. Baker-Kinney, her co-worker, and Cosby present, Cosby offered Ms. Baker-Kinney two pills, which she believed to be barbiturates.

59.     Cosby insisted Ms. Baker-Kinney swallow the two pills and assured her she would be fine.

60.     Ms. Baker-Kinney swallowed the pills at Cosby's insistence.

61.     When Ms. Baker-Kinney swallowed the pills, she was not anticipating nor was she consenting to any sexual acts between her and Cosby.

62.     Shortly    after    swallowing    the    pills,    Ms.    Baker-Kinney    lost consciousness.

63.     When Ms. Baker-Kinney regained consciousness, she was unable to focus or walk a straight line due to the continued effects of the pills. Cosby was sitting next to her, with his hand in her open blouse. Her pants were also undone.

64.     Cosby took Ms. Baker-Kinney, who was still incapacitated, into a bedroom, where she lost consciousness again.

65.     When Ms. Baker-Kinney regained consciousness, she was naked in bed next to Cosby, with wetness between her legs, while he was groping her body and genital area.

66.     Cosby engaged in sexual acts with Ms. Baker-Kinney, including penetration, without her consent and against her will.

67.     Ms. Baker-Kinney did not have the mental and physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

68.     Cosby knew or should have known that Ms. Baker-Kinney was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF REBECCA COOPER

69.     In the mid-1980s, Rebecca Cooper met Cosby at a health club where she worked as a masseuse in Las Vegas, Nevada.

70.     After Ms. Cooper and Cosby developed a professional, but friendly, relationship, Cosby invited Ms. Cooper to his shows several times.

71.     On one such occasion, Cosby invited Ms. Cooper to attend his show, have dinner, and provide masseuse services to him because of a tennis injury.

72.     While at dinner, Cosby offered Ms. Cooper a beverage, which she accepted.

73.     The beverage was brought to the table by an employee of Cosby.

74.     Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Cooper's knowledge or consent, prior to giving the beverage to Ms. Cooper.

75.     After Ms. Cooper sipped the beverage, Cosby insisted that she drink it all, to which she complied.

76.     Before Ms. Cooper had a chance to eat dinner, Cosby informed her that they did not have time, and escorted her to his dressing room.

77.     As she was being escorted to the dressing room, Ms. Cooper felt disoriented, wobbly, and uncoordinated.

78.     Once isolated in his dressing room, Cosby vaginally raped Ms. Cooper with his penis.

79.     Ms. Cooper resisted and told Cosby to stop, but he did not.

80.     When Cosby raped Ms. Cooper, she was still feeling the effects of the beverage, including an inability to move.

81.     Cosby engaged in sexual acts with Ms. Cooper, including penetration, without her consent and against her will.

82.     Ms. Cooper did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

83.     Cosby knew or should have known that Ms. Cooper was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF LINDA KIRKPATRICK

84.     In or around 1981, Ms. Kirkpatrick met Cosby when playing tennis in Las Vegas, Nevada.

85.     After they met, Cosby invited Ms. Kirkpatrick to attend one of his shows in Las Vegas, and she accepted his invitation.

86.     When she arrived at the show, Ms. Kirkpatrick was invited backstage.

87.     Once backstage, Cosby gave Ms. Kirkpatrick a beverage, which she partially drank.

88.     Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Kirkpatrick's knowledge or consent, prior to giving the beverages to Ms. Kirkpatrick.

89.     After Ms. Kirkpatrick drank the beverage provided by Cosby, she blacked out, and was in and out of consciousness.

90.     During a moment of consciousness, Ms. Kirkpatrick found herself lying on the floor of Cosby's dressing room, incapacitated, with Cosby atop her, forcefully kissing her and reaching into her pants, with his penis pressed against her. She was unable to resist due to incapacitation and paralysis from the beverage.

91.     Cosby engaged in sexual acts with Ms. Kirkpatrick, including penetration, without her consent and against her will.

92.   Ms. Kirkpatrick did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby in his suite.

93.   Cosby knew or should have known that Ms. Kirkpatrick was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF JANICE DICKINSON

94.   In or around 1982, Ms. Dickinson was invited by Cosby to Lake Tahoe, Nevada, under the pretense that he wanted to discuss a potential role on his television show and other employment opportunities.

95.   When Ms. Dickinson arrived, Cosby took Ms. Dickinson to dinner.

96.   While at dinner, Ms. Dickinson complained of menstrual cramps, to which Cosby offered a pill under the pretense that it would be helpful for her cramps.

97.   Shortly after ingesting the pill provided by Cosby, Ms. Dickinson felt woozy, dizzy, and disoriented.

98.   After dinner, Cosby invited Ms. Dickinson to his suite to finish their conversation.

99.   Ms. Dickinson continued to feel the effects of the pill, including weakness and disorientation, in Cosby's suite.

100.   Once isolated in Cosby's suite, Cosby vaginally and anally raped Ms. Dickinson with his penis.

101.    During the rape, Ms. Dickinson told Cosby to stop, but Cosby ignored her.

102.    During the rape, Ms. Dickinson attempted to fight Cosby off, but was unable to do so because of the pill that she had received from Cosby.

103.    Cosby engaged in sexual acts with Ms. Dickinson, including penetration, without her consent and against her will.

104.    Ms. Dickinson did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

105.    Cosby knew or should have known that Ms. Dickinson was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### PLAINTIFF ANGELA LESLIE

106.    In or around the late 1980s or early 1990s, Cosby invited Ms. Leslie to travel to Las Vegas, Nevada under the pretense that he wanted to mentor Ms. Leslie, including by helping her with her acting skills.

107.    When Ms. Leslie arrived in Las Vegas, she met Cosby at his suite, where Cosby directed Ms. Leslie to act like she was intoxicated under the pretense that this was an acting exercise.

108.    After Ms. Leslie did the exercise, Cosby offered Ms. Leslie an alcoholic beverage under the pretense that she would perform better if she had a sip of the drink.

109.   Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Leslie's knowledge or consent, prior to giving the beverage to Ms. Leslie.

110.   Ms. Leslie sipped some of the drink at Cosby's direction.

111.   Cosby then directed Ms. Leslie to wet her hair, which she did in the bathroom, assuming it would be for another acting scene. When she returned from the bathroom, Cosby was sitting on his bed, wearing only a white robe.

112.   Cosby then, without Ms. Leslie's consent, grabbed Ms. Leslie's hand, covering it in lotion.

113.   Cosby then, without Ms. Leslie's consent, forced Ms. Leslie's hand onto his penis and forced her to masturbate him, by holding and moving her hand on his penis.

114.   Cosby then tried to climb atop Ms. Leslie, but she fought him off.

115.   Cosby briefly went to the bathroom, and when he returned, told Ms. Leslie that she needed to leave because he had a phone call; Ms. Leslie fled the suite.

116.   Cosby engaged in sexual acts with Ms. Leslie without her consent and against her will.

117.   Ms. Leslie did not consent to any sexual acts that were perpetrated against her by Cosby in his suite.

## PLAINTIFF PAM JOY ABEYTA

118.    In or around 1979, Ms. Abeyta traveled with a friend and colleague of Cosby from California to Las Vegas, Nevada to meet Cosby for professional networking purposes.

119.    Ms. Abeyta was first introduced to Cosby in Cosby's dressing room, while other people were present, after Cosby performed a show in Las Vegas, Nevada.

120.    During their initial meeting, Cosby had his friend/colleague brought Ms. Abeyta to his suite under the pretense that they could continue their initial meeting that began in the dressing room.

121.    While in his suite that evening, Cosby invited Ms. Abeyta to attend a dinner show with him and others the next evening.

122.    That evening, Ms. Abeyta slept alone in one of the several bedrooms within Cosby's suite.

123.    The next evening, at the dinner show, Ms. Abeyta was provided with a beverage.

124.    Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Abeyta's knowledge or consent, prior to giving the beverage to Ms. Abeyta.

125.    After Ms. Abeyta drank the beverage, she felt dizzy and required assistance to return to the suite.

126.    After the dinner show ended, Cosby returned to the suite, where Ms. Abeyta was alone, sitting in the living room area.

127.    When Cosby returned, he put a pill in Ms. Abeyta's mouth without her consent, under the pretense that it would relax her.

128.    Shortly after swallowing the pill, Ms. Abeyta blacked out.

129.    When Ms. Abeyta awoke, she was in Cosby's bedroom, within the suite, with Cosby naked and atop her.

130.    Ms. Abeyta also recalls touching Cosby's penis in her compromised state, and the bed being wet, potentially from Cosby's ejaculate.

131.    That same evening, as Ms. Abeyta was regaining her consciousness and clarity of mind, Cosby placed a second pill in her mouth, without her consent, causing her to black out again.

132.    The next morning, Ms. Abeyta's legs were sore, and she had bruises on her legs, including on her inner thighs.

133.    Upon information and belief, Cosby engaged in sexual acts with Ms. Abeyta, including penetration, without her consent and against her will.

134.    Ms. Abeyta did not consent to and did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby in his suite.

135.    Cosby knew or should have known that Ms. Abeyta was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

16

### <u>P</u>LAINTIFF <u>H</u>EIDI <u>T</u>HOMAS

136.    In or around 1984, Cosby invited Ms. Thomas to travel from Denver, Colorado to Reno, Nevada, under the pretense that he wanted to coach and mentor her as an actress.

137.    When Ms. Thomas arrived in Reno, Nevada, she was taken by car to a private property where Cosby was staying.

138.    As part of the supposed mentoring session, Cosby asked Ms. Thomas to read a monologue of a character who was intoxicated.

139.    When Ms. Thomas told Cosby that she did not drink alcohol, Cosby insisted that she try an alcoholic beverage to aid her acting.

140.    Cosby provided Ms. Thomas with a beverage under that pretense.

141.    Upon information and belief, Cosby had placed or caused to have placed an intoxicant in the beverage, without Ms. Thomas' knowledge or consent, prior to giving the beverage to Ms. Thomas.

142.    Ms. Thomas sipped the beverage provided to her by Cosby.

143.    After Ms. Thomas drank the beverage provided to her by Cosby, Ms. Thomas blacked out, and was in and out of consciousness for several days.

144.    During one moment of consciousness, Ms. Thomas found herself in bed with Cosby, who was naked and forcing his penis into her mouth.

145.    Cosby engaged in sexual acts with Ms. Thomas, including penetration, without her consent and against her will.

17

146.   Ms. Thomas did not consent to and did not have the mental or physical capacity to consent to or resist any sexual acts that were perpetrated against her by Cosby.

147.   Cosby knew or should have known that Ms. Thomas was mentally or physically incapable of consenting or resisting when he engaged in sexual acts with her.

### AS AND FOR A FIRST CAUSE OF ACTION
### BY ALL PLAINTIFFS FOR SEXUAL ASSAULT

148.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

149.   Cosby's conduct constituted sexual assault under Nevada Revised Statues, Chapter 11; Added by 2023 Nev. SB 129, § 1.

150.   Cosby forcefully sexually penetrated or otherwise sexually assaulted Plaintiffs against their will, all while Cosby knew they were mentally and physically incapable of resisting or consenting.

151.   As a direct, proximate, and legal result of Cosby's sexual assault of Plaintiffs, the Plaintiffs suffered horrific injuries, including, but not limited to, severe physical injury and emotional distress and lifelong psychological trauma.

152.   At all times mentioned herein, Cosby intended to cause the Plaintiffs injury and/or his acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff and others.

153.   As a direct and proximate result of the sexual assaults, Plaintiffs sustained in the past and will continue to sustain in the future psychological injury, pain, and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

154.   As a direct and proximate result of the aforementioned sexual assaults, Plaintiffs have incurred or will incur medical expenses and other economic damages in an effort to cure themselves of the injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

155.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

156.    By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate, to deter said Defendant and others from future similar misconduct.

157.   Upon information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

### AS AND FOR A SECOND CAUSE OF ACTION
### BY ALL PLAINTIFFS FOR BATTERY

158.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

159.   Cosby's unlawful, abusive, manipulative, and predatory acts against Plaintiffs amounted to harmful and offensive contacts to Plaintiffs' persons, each of which was done intentionally by Cosby without Plaintiffs' consent.

160.   Cosby willfully and lawfully used force or violence upon Plaintiffs.

161.   Cosby touched Plaintiffs with the intent to harm or offend Plaintiffs.

162.   Plaintiffs did not consent to the touching.

163.   Cosby's conduct in touching Plaintiffs was harmful and offensive.

164.   As a direct and proximate result of the batteries, Plaintiffs sustained in the past and will continue to sustain in the future psychological injury, pain, and suffering, serious and severe psychological and emotional distress, physical injury, mental anguish, embarrassment, and humiliation.

165.   As a direct and proximate result of the aforementioned batteries, Plaintiffs have incurred or will incur medical expenses and other economic damages to cure themselves of the injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

166.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

167.   By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate, to deter said Defendant and others from future similar misconduct.

168.   Upon information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

### As and For A Third Cause of Action
### By All Plaintiffs for Assault

169.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

170.   Cosby's predatory, abusive, manipulative, and unlawful acts against Plaintiffs created a reasonable apprehension in Plaintiffs of immediate harmful or offensive contact as to Plaintiffs' persons, all of which was done intentionally by Cosby to Plaintiffs without Plaintiffs' consent.

171.   Cosby unlawfully attempted to use physical force against Plaintiffs.

172.   Cosby intentionally placed Plaintiffs in reasonable apprehension of immediate bodily harm.

173.   Plaintiffs were in reasonable apprehension of immediate bodily harm because of the conduct of Cosby.

174.   As a direct and proximate result of the aforementioned assault, Plaintiffs sustained in the past and will continue to sustain in the future serious and severe psychological injuries and emotional distress, physical injury, mental anguish, embarrassment, and humiliation.

175.   As a direct and proximate result of the aforementioned assaults, Plaintiffs have incurred or will incur medical expenses and other economic damages

in an effort to cure themselves of the injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

176.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

177.   By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

178.   On information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

### AS AND FOR A FOURTH CAUSE OF ACTION
### BY ALL PLAINTIFFS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

179.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

180.   Cosby engaged in outrageous and extreme conduct toward Plaintiffs with the intention to cause, or with reckless disregard for the probability of causing, Plaintiffs to suffer severe emotional distress.

181.   Cosby knew the Plaintiffs were incapacitated and could not consent, and he intended to sexually batter the Plaintiffs with a complete disregard of the physical and emotional trauma caused to the Plaintiffs.

182.    As a proximate result of the outrageous and extreme conduct of Cosby in assaulting and battering Plaintiffs, Plaintiffs suffered and continue to suffer from extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

183.    Cosby committed the acts alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiffs from an improper or evil motive amounting to malice and/or in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to recover punitive damages from Cosby in such sums as a jury would find fair, just, and appropriate, to deter Cosby and others from future similar misconduct.

184.    As a direct and proximate result of the intentional infliction of emotional distress, Plaintiffs sustained in the past and will continue to sustain in the future psychological injury, pain, and suffering, serious and severe psychological and emotional distress, physical injury, mental anguish, embarrassment, and humiliation.

185.    As a direct and proximate result of the aforementioned intentional infliction of emotional distress, Plaintiffs have incurred or will incur medical expenses and other economic damages in an effort to cure themselves of the injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation. By reason of the foregoing, Plaintiffs are entitled to compensatory damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

186.   By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

187.   Upon information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

### As and For A Fifth Cause of Action
### By All Plaintiffs for Negligent Infliction of Emotional Distress

188.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

189.   Cosby's conduct created a risk of physical harm to Plaintiffs.

190.   Cosby failed to exercise the degree of care that an ordinarily careful and prudent person would exercise under the circumstances set forth above.

191.   The Plaintiffs lifelong suffering of emotional distress from Cosby's conduct was a foreseeable risk that Cosby knew or should have known before engaging in the above-described horrendous acts towards the Plaintiffs.

192.   As a direct and proximate result of the aforementioned negligence, Plaintiffs sustained in the past and will continue to sustain in the future psychological injury, pain, and suffering, serious and severe psychological and emotional distress, physical injury, mental anguish, embarrassment, and humiliation.

193.   As a direct and proximate result of the aforementioned negligence, Plaintiffs have incurred or will incur medical expenses and other economic damages in an effort to cure themselves of the injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

194.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

195.    By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

196.   Upon information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

### AS AND FOR A SIXTH CAUSE OF ACTION
### BY AND ALL PLAINTIFFS FOR FALSE IMPRISONMENT

197.   Plaintiffs repeat, reiterate and reallege every allegation contained in all preceding paragraphs with the same force and effect as if hereafter set forth at length.

198.   Cosby, intentionally and without the right to do so, confined Plaintiffs within boundaries fixed by Cosby.

199.   Cosby's acts directly or indirectly resulted in the confinement of Plaintiffs.

200.   Plaintiffs were aware of their confinement.

201.   Plaintiffs were harmed by their confinement.

202.   As a direct and proximate result of the false imprisonments, Plaintiffs sustained in the past and will continue to sustain in the future psychological injury, pain, and suffering, serious and severe psychological and emotional distress, mental anguish, physical injury, embarrassment, and humiliation.

203.   By reason of the foregoing, Plaintiffs are entitled to compensatory damages from Cosby in such sums as a jury would find fair, just, and adequate.

204.   By reason of the foregoing, Plaintiffs are further entitled to punitive damages from defendant Cosby in such sums as a jury would find fair, just, and adequate.

205.   Upon information and belief, as a proximate result of the conduct alleged hereinabove, Plaintiffs have suffered damages, including special and general damages, according to proof.

## JURY DEMAND

206.   Plaintiffs hereby demand that this matter be tried by a jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.   Compensatory damages to each Plaintiff for pain, suffering, injury, emotional distress, and for medical expenses, past and future;

2.   Prejudgment interest and post judgment interest as allowed under the law;

3.   Punitive damages to each Plaintiff as permitted under the law;

4. Attorneys' fees and costs as permitted under the law; and

5. Such other and further relief against Defendant in such sum as a jury would find fair, adequate, and just.

Dated:      Clark County, Nevada
            June 14, 2023

**MERSON LAW, PLLC**

 /s/ Nathan E. Werksman
Nathan E. Werksman, Esq.
Jordan K. Merson, Esq.
Jordan K. Rutsky, Esq.
Alice A. Bohn, Esq.
Manraj S. Sekhon, Esq.
Attorneys for Plaintiffs
To Be Admitted *Pro Hac Vice*

Dated:      Clark County, Nevada
            June 14, 2023

**PANISH, SHEA, BOYLE, RAVIPUDI, LLP**
300 South Fourth Street, Suite 710
Las Vegas, Nevada 89101

 /s/ Brian J. Panish
Brian J. Panish, Esq.
Rahul Ravipudi, Esq
Robert Glassman Esq.