1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Lisa Lotte-Lublin, Lili Bernard, Janice
Baker-Kinney, Rebecca Cooper, Linda
Kirkpatrick, Janice Dickinson, Angela
Leslie, Pam Joy Abeyta, Heidi Thomas,
and Jane Fazzari,

                Plaintiffs,

    v.

William Cosby, Jr.,

                Defendant.

Case No. 2:23-cv-00932-GMN-DJA

**Report and Recommendation**

Plaintiffs are a group of ten women who allege that, between the 1970s and 1990s, Defendant—William ("Bill") Cosby—used his fame, power, and prestige to isolate them, drug or attempt to drug them, and then sexually assault them. Plaintiffs' claims each arise out of events that took place in Nevada and Plaintiffs each allege that Defendant drugged or attempted to drug them before engaging in sex acts, including penetration, with them against their will. The Plaintiffs bring their claims by virtue of Nevada's passage of Senate Bill 129,[1] which abolished the statute of limitations for civil actions involving sexual assault against victims over 18 years old. Plaintiffs sue Defendant for damages, alleging six causes of action: sexual assault; battery;

---

[1] Senate Bill 129 provides:

    1.  An action to recover damages for an injury to a person arising from the sexual assault of the plaintiff which occurred when the plaintiff was 18 years of age or older may be commenced against the alleged perpetrator or the person convicted of the sexual assault at any time after the sexual assault occurred…

    2.  As used in this section, "sexual assault" has the meaning ascribed to it in NRS 200.366.

S.B. 129, 2023 Leg., 82nd Sess. (Nev. 2023).

assault; intentional infliction of emotional distress; negligent infliction of emotional distress; and false imprisonment. Defendant moves to dismiss each claim.

Defendant argues that sexual assault is not a separate civil claim. Defendant also singles out Angela Leslie's allegations, arguing that they cannot constitute sexual assault for the purposes of SB 129 because Leslie alleged that Defendant forced her to use her hand to masturbate him, which he argues does not constitute "penetration" for the purposes of the statute. Defendant also argues that the Plaintiffs' claims should be severed and tried individually.

The remainder, and bulk, of Defendant's arguments are that SB 129 is unconstitutional under both the United States Constitution and the Nevada Constitution. He argues that the statute violates the special legislation clause of the Nevada Constitution, that it violates due process under both the United States and Nevada Constitutions, and that it violates the *ex post facto* clauses of both the United States and Nevada Constitutions. The Court finds only one of Defendant's arguments—that sexual assault is not a separate tort claim—to have merit. It thus recommends denying Defendant's motion to dismiss on all but this ground.

### Legal Standard

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983). At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.* (internal quotation marks and citation omitted). The "plausibility standard" does not impose a "probability requirement"; rather, it requires a complaint to contain "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A court should assume the veracity of well-pleaded factual allegations and "then determine whether they could plausibly give rise to an entitlement of relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks, citation, and brackets omitted). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

The United States Supreme Court's decision in *Ashcroft v. Iqbal* provides a two-step framework for considering the sufficiency of factual allegations subject to a motion to dismiss under FRCP 12(b)(6). First, the Court may choose to begin by identifying which of the complaint's factual allegations are no more than "legal conclusions" or "mere conclusory statements," because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 680. The inquiry then becomes whether the remaining nonconclusory allegations make it plausible that an actionable claim exists. *Id.* at 681.

### Discussion

#### I.    Whether SB 129 creates a new common law tort for sexual assault.

Defendant argues that the Court should dismiss the "sexual assault" cause of action that each Plaintiff brings because sexual assault is a crime, not a common law or statutory tort, and SB 129 does not make it so. (ECF No. 39 at 8). Plaintiffs do not respond to this argument,

constituting their consent to the Court granting Defendant's requested relief.  *See* LR 7-2(d).  And the Court has not found any authority establishing sexual assault as a private cause of action under Nevada law.  The Court recommends dismissing Plaintiffs' claim for sexual assault.

**II.    Whether SB 129 revives Leslie's claim.**

Defendant argues that Leslie does not allege a sexual assault and thus, SB 129 does not revive her claims.  (ECF No. 39 at 8).  Defendant asserts that, because Leslie claims that Defendant forced her to masturbate him with her hand, she does not allege a claim for sexual penetration under NRS 200.364(9), which is necessary to state a claim for sexual assault under NRS 200.366.  (*Id.* at 8-9).  Plaintiffs respond that Defendant reads NRS 200.364(9) too narrowly and point out that the statute defines "sexual penetration" as, among other things, "any intrusion, however slight, of any part of a person's body."  (ECF No. 42 at 29).  Because Defendant forced his penis—constituting intrusion—into Leslie's hand—a part of her body—Plaintiffs argue that Leslie has satisfied the definition of sexual assault such that SB 129 revives her claim.  (*Id.*).  Defendant replies that it is Plaintiffs who read the statute improperly, pointing out that the statute defines "sexual penetration" as "cunnilingus, fellatio, or any intrusion, however slight, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another."  (ECF No. 46 at 2).  Because Leslie does not allege any genital or anal intrusion, Defendant argues that she does not allege sexual assault.  (*Id.* at 2-3).

Under NRS 200.366(1)(a), a person is guilty of sexual assault if the person "[s]ubjects another person to sexual penetration, or forces another person to make a sexual penetration on themselves or another…against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of the perpetrator's conduct."  NRS 200.364(9) defines "sexual penetration" as "cunnilingus, fellatio, or any intrusion, however slight, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another, including sexual intercourse in its ordinary meaning."

"Statutory construction must begin with the language employed by [the legislative body] and the assumption that the ordinary meaning of that language accurately expresses the legislative

purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).  Under the rule of the last antecedent, "[q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing." *Lockhart v. United States*, 577 U.S. 347, 351 (2016).  In *Lockhart*, the United States Supreme Court applied the rule of the last antecedent to interpret 18 U.S.C. § 2252(b)(2), which increases criminal sentences if the defendant has "a prior conviction…under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *Lockhart*, 577 U.S. at 350-52.  Using that rule, the Supreme Court concluded that the limiting phrase "involving a minor or ward" modified only the immediately preceding crime in the list of offenses, "abusive sexual conduct," and did not modify the other listed crimes, "aggravated sexual abuse," or "abusive sexual conduct."  *Id.* at 349.

Here, the Court finds that Leslie's claims are revived by SB 129 because she has alleged a sexual assault under NRS 200.364 and NRS 200.366.  Starting with the language employed by the Nevada Legislature, the ordinary meaning of sexual penetration as including penetration of "any part of a person's body" would accurately express the legislative purpose of NRS 200.364 and NRS 200.366.  The Legislature summarized that the addition of these provisions "redefines the crime of forcible rape as sexual assault…[and] focuses upon sexual assault as a crime of violence rather than one of passion."  SUMMARY OF LEGISLATION, S.B. 142, 1977 Leg., 59th Sess., at 2 (Nev. 1977).  In doing so, the Legislature heard statements that old laws governing rape failed to acknowledge that men were also subject to sexual assault.  *Senate Judiciary Hearing on SB 412 – April 5, 1977*, 1977 Leg., 59th Sess., at 712 (testimony by Florence McClure, Dir. of Community Action Against Rape).  Reading the statute to incorporate penetration of a person's hand is in line with the statute's purpose of broadening the definition of sexual assault.

Additionally, under the rule of the last antecedent, the qualifying words "manipulated or inserted by a person into the genital or anal openings of the body of another" modify the phrase immediately preceding them, "object" rather than the more remote phrase "any intrusion,

however slight, of any part of a person's body."  This squares with the Supreme Court's interpretation in *Lockhart* that the qualifying term "conduct involving a minor or ward" modified only the phrase preceding it— "abusive sexual conduct"—and not the prior listed crimes.  Here, "manipulated or inserted by a person into the genital or anal openings of the body of another," modifies only "object" and not the prior listed act of "any intrusion."  The Court thus recommends denying Defendant's motion to dismiss Leslie's claims because SB 129 revives them.

### III.    Whether SB 129 violates the special legislation clause of the Nevada Constitution.

Defendant argues that SB 129 violates the special legislation clause of the Nevada Constitution because it singles out and punishes individuals who have committed sexual assault, "as opposed to individuals who have committed any other heinous crime."  (ECF No. 39 at 10).  Defendant argues that there is no basis for treating sexual assault victims differently than victims of any other type of interpersonal violence and no basis for punishing perpetrators of sexual assault differently than perpetrators of any other heinous crime.  (*Id.* at 10-12).  Plaintiffs respond that SB 129 is not a "special law" because it applies to the entire class of sexual assault survivors.  (ECF No. 42 at 23).  Plaintiffs argue that Defendant misconstrues the relevant class as perpetrators of all "heinous" crimes such that the law treats perpetrators of sexual assault—a subclass of heinous crimes—differently.  (*Id.*).  Plaintiffs argue that Defendant's attempt to define this fictitious class as one to which the law does not apply equally to all class members is faulty because it would mean that even the criminal statute for sexual assault is unconstitutional as it treats perpetrators of sexual assault differently than perpetrators of other, ostensibly heinous crimes.  (*Id.*).

Defendant replies that he does not argue that the relevant class is "all heinous crimes."  (ECF No. 46 at 3).  Defendant points out that the relevant class is victims of sex offenses and perpetrators of sex offenses and argues that SB 129 does not apply to *all* victims of sex offenses or *all* perpetrators of sex offenses, as Plaintiffs suggest.  (*Id.*).  Instead, it applies to a small subset of sex offenses involving penetration, which are not the only types of interpersonal violence that

1  the legislative history of SB 129 asserts that it was designed to address.  (*Id.* at 3-4).  Because SB

2  129 is not made general to all victims and perpetrators of "interpersonal violence" or even all

3  victims and perpetrators of sexual crimes, Defendant claims that SB 129 was passed in violation

4  of the Nevada Constitution.  (*Id.*).

5       The Nevada Constitution prohibits the Legislature from passing "local" and "special

6  laws."  Nev. Const. art. 4, § 20.  The Nevada Supreme Court has explained the prohibition against

7  local and special laws under Article 4, Sections 20 and 21 as follows

8        [I]f a statute be either a special or local law, or both, and comes
         within any one or more of the cases enumerated in section 20,[2] such
9        statute is unconstitutional; if the statute be special or local, or both,
         but does not come within any of the cases enumerated in section 20,
10       then its constitutionality depends upon whether a general law can be
         made applicable.
11

12       *Conservation District v. Beemer*, 45 P.2d 779, 782 (1935).

13       The Nevada constitutional framers' purpose in adopting mandates proscribing local and

14  special legislation was to "remedy an evil into which it was supposed the territorial legislature

15  had fallen in the practice of passing local and special laws for the benefit of individuals instead of

16  enacting laws of a general nature for the benefit of the public welfare."  *Clean Water Coalition v.*

17  *The M Resort, LLC*, 255 P.3d 247, 254 (Nev. 2011) (quoting *Evans v. Job*, 8 Nev. 322, 333

18  (1873)).

19       The Nevada Supreme Court has noted that "a law which applies only to an individual or to

20  a number of individuals selected out of the class to which they belong, is a special and not a

21  general law."  *State v. California Min. Co.*, 15 Nev. 234, 249 (1880).  In other words, a law is

22  considered "special legislation if it confers particular privileges or imposes peculiar disabilities,

23  or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily

24  selected, from the general body of *those who stand in precisely the same relation to the subject of*

25  *the law.*"  *City of Fernley v. State Dep't of Tax*, 366 P.3d 699, 708-709 (Nev. 2016) (quoting

26

27  _____

28  [2] Section 20 enumerates certain cases—which are not applicable here—in which the legislature
    may not pass local or special laws.  Nev. Const. art. 4, § 20

*Clean Water Coalition*, 255 P.3d at 254) (emphasis in *City of Fernley*).  However, even then, special laws are not necessarily unconstitutional.  *See Clean Water Coalition*, 255 P.3d at 312.  A special law may be upheld if a general law could not have been made applicable.  *Id.*

Here, Defendant has not made the threshold showing that SB 129 is a special law because he has not shown that it applies to a subclass of individuals who otherwise stand in the same relation to the subject of the law.  The Court is not convinced that perpetrators of "other heinous crimes," "interpersonal violence," or "sexual crimes"—as Defendant vaguely asserts—stand in precisely the same relation to the subject of SB 129.  While Defendant argues that these other ill-defined crimes may result in similar trauma as sexual assault, the same could be said of many crimes.  But, as Plaintiffs point out, the Nevada Legislature designed SB 129 to address the "uniquely intimate" crime of sexual assault, which often leaves its victims without the wherewithal to report the crime for many years.  While victims of other crimes may also feel reluctant to report other "heinous," "interpersonal," and "sexual" crimes, Defendant has not shown how these other crimes are of the "uniquely intimate" nature such that their victims stand on precisely the same ground as sexual assault victims.  He has also not shown that the perpetrators of these crimes stand on the same ground as perpetrators of other crimes.  Ultimately, Defendant has not shown that SB 129 treats individuals who stand on precisely the same ground differently for arbitrary reasons.  Defendant has not met his burden of showing that SB 129 is a special law.

But even if Defendant did show that SB 129 is a special law, he has not shown that it is unconstitutional.  Defendant has not shown that the Nevada Legislature could have come up with a general law that would impact the broader class of persons Defendant so vaguely defines.  It is hard to imagine the Nevada Legislature expanding SB 129 to apply to such an ill-defined class as perpetrators and victims of "heinous," "interpersonal," or even "sexual" crimes.  Indeed, whether a crime fits any of these descriptions could vary depending on who you ask, not necessarily the crimes themselves.  And so, the Court does not find that the Nevada Legislature could have come up with a general law and recommends denying Defendant's motion to dismiss on this ground.

1
2

### IV.   Whether SB 129 violates the Due Process Clauses of the United States and Nevada Constitutions.

3
4
5
6
7
8
9
10
11

Defendant argues that SB 129 deprives him of a property right—the statute of limitations—without due process in violation of the United States and Nevada Constitutions. (ECF No. 39 at 12-13).  Defendant cites a Utah Supreme Court decision for the proposition that reviving a time-barred claim violates constitutional due process principals.  (*Id.*) (*citing Mitchell v. Roberts*, 469 P.3d 901, 908 (Utah 2021)).  And although Defendant acknowledges that the United States Supreme Court has concluded that statutes of limitations are "arbitrary enactments" and not "vested rights," Defendant nonetheless urges the Court to align with the dissent and find that the statute of limitations that SB 129 revived was a vested right of which Defendant was deprived.  (*Id.* at 14-15) (*citing Campbell v. Holt*, 115 U.S. 629 (1885)).

12
13
14
15
16

Plaintiffs respond that, as Defendant acknowledges, a statute of limitations cannot create a vested right such that SB 129 has deprived Defendant of a property right without due process. (ECF No. 42 at 10).  Plaintiff points to the Supreme Court's decision in *Campbell* and the cases that have followed it, explaining that *Campbell* is binding on this Court and that the non-binding cases Defendant cites, including *Mitchell*, do not change that fact.  (*Id.* at 12-13).

17
18
19
20
21
22
23
24
25
26

In reply Defendant again acknowledges that the Supreme Court determined that statutes of limitations are not vested rights and states that he will not argue the issue further.  (ECF No. 46 at 4).  However, Defendant points out that Plaintiffs have not addressed Defendant's argument that SB 129 violates the due process clause of the *Nevada* Constitution, which is a separate and unresolved matter.  (*Id.*).  Defendant argues that Plaintiff has failed to cite a single Nevada case which holds that statutes of limitations are not vested rights under Nevada law.  (*Id.*).  On the other hand, Defendant asserts that he has cited to persuasive authority, including *Mitchell*, that the Nevada Supreme Court would find that SB 129 violates the Nevada Constitution by reviving expired statutes of limitation and depriving Defendant of a vested property right without due process of law.  (*Id.*).

27
28

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law.  U.S. Const. amend. XIV, § 1.

1    The United States Supreme Court has explicitly concluded that statutes of limitation do not create

2    property rights. *See Campbell v. Holt*, 115 U.S. 620, 629 (1885) ("[w]e are unable to see how a

3    man can be said to have *property* in the bar of the statute as a defense to his promise to pay.")

4    (emphasis in original).  This holding binds this Court.

5        The Nevada Constitution, relatedly, states that "[a]ll men are by Nature free and equal and

6    have certain inalienable rights among which are those of enjoying and defending life and liberty;

7    Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness."

8    Nev. Const. art. 1, § 1.  Nevada's Due Process Clause mirrors its federal counterpart and federal

9    law is informative as to the scope of Nevada's procedural due process guarantee.

10   *Dekker/Perich/Sabatini Ltd. v. Eighth Judicial District Court*, 495 P.3d 519, 524 (Nev. 2021).

11   While the Nevada Supreme Court has not explicitly found that statutes of limitation do not create

12   vested property rights, its decision in *Dekker* suggests that it would make that finding if

13   confronted with the question.  *Id.* at 524-25.

14       There, the Nevada Supreme Court considered whether a statute of repose[3] created a vested

15   property right and found that it did not.  *Id.*  The City of North Las Vegas had hired

16   Dekker/Perick/Sabatini ("Dekker") to build a fire station.  *Id.* at 521.  Dekker finished the work in

17   2009.  *Id.*  In 2017 the City investigated cracks in the station's foundation and walls, however, at

18   the time NRS 11.202 imposed a six-year repose period on construction defect actions.  *Id.*  But in

19   2019, the Legislature enacted Assembly Bill 421, which extended NRS 11.202's repose period to

20   ten years.  *Id.*  The City filed suit after the six year repose period had passed, but before the

21   amendment took place.  *Id.*  Dekker moved to dismiss the action, arguing that the claims were

22   time-barred under NRS 11.202.  *Id.*  The district court agreed and dismissed the City's complaint.

23   *Id.*  Shortly thereafter, the City moved to alter the judgment under Nevada Rule of Civil

---

25   [3] A statute of repose is distinguishable from a statute of limitation, but concerns the same issues—
26   freedom from a potential claim—that Defendant raises here.  "'Statutes of repose' bar causes of
     action after a certain period of time, regardless of whether damage or an injury has been
27   discovered.  In contrast, 'statutes of limitation' foreclose suits after a fixed period of time
     following occurrence or discovery of an injury."  *Alsenz v. Twin Lakes Village, Inc.*, 843 P.2d
28   834, 836 (Nev. 1992).

Procedure 59(e), arguing that the intervening amendment of NRS 11.202 meant that the ten-year statute of repose was now in effect and governed its claims. *Id.* Dekker argued, in part, that the Court would violate its due process rights if it granted the City's motion. *Id.* at 521-22. The district court granted the City's motion and Dekker moved for a writ of mandamus. *Id.* at 522.

On writ, the Nevada Supreme Court determined that permitting the amendment to retroactively restore the City's time-barred claim did not violate Dekker's due process rights because Dekker did not have a vested right to be free from a construction defect claim. *Id.* at 524. The Nevada Supreme Court noted that Nevada's Due Process Clause mirrors its federal counterpart in reaching this decision. *Id.* And it noted that "[a]lthough several jurisdictions appear to recognize substantive rights under statutes of repose, Dekker does not point to any Nevada law characterizing statutes of repose as awarding an entitlement to be free from a state claim." *Id.*

The Nevada Supreme Court continued its reasoning, finding that, even if Dekker had established a vested right in the statute of repose, the retroactive application of NRS 11.202 was justified by a rational legislative purpose such that it met due process requirements. *Id.* at 525. The court explained that "the Legislature extended the repose period to reflect the timeframe in which these types of defects most often materialize and thus more fairly allow the pursuit of claims based on such defects." *Id.* "Accordingly, the application of NRS 11.202's extended repose period does not offend due process." *Id.*

Here, the Court finds that Defendant does not have a vested property right in the statute of limitations impacted by SB 129 under the United States Constitution. As Defendant acknowledges, the Supreme Court has found that statutes of limitations do not create property rights. And that holding binds this Court.

Additionally, the Court is not convinced that the Nevada Supreme Court would find that statutes of limitations create property rights protected by the Nevada Constitution. The Nevada Supreme Court has explicitly stated that the state's due process clause mirrors its federal counterpart and that federal law is informative as to the scope of Nevada's procedural due process guarantee. This means that the Supreme Court's finding that statues of limitations do not create

property rights in the context of the due process clause of the United States Constitution is an inclination that the Nevada Supreme Court would likely find the same regarding the state's Constitution.

The Court also finds that the Nevada Supreme Court's decision in *Dekker* suggests the same. Although the statute of limitations at issue here is not quite the same as the statute of repose at issue in *Dekker*, both the statute of limitations and the statute of repose create a time after which a party is protected from a claim. And just as the Legislature extended the statute of repose in *Dekker*, here, the Legislature has extended the statute of limitations for sexual assault claims. Just as the Nevada Supreme Court found that reopening a claim did not violate Dekker's due process rights, the Court finds here that SB 129's reopening of a sexual assault claim would not violate Defendant's due process rights. This is because, as the Nevada Supreme Court noted in *Dekker*, a party does not have a vested property right to be free from a claim.

But even if it did, even if Defendant had a vested property right under the Nevada Constitution to be free from Plaintiffs' sexual assault claims, the Court would still find that SB 129 was jusified by a rational legislative purpose such that it meets due process requirements. The Legislature was motivated to update the statute of repose in *Dekker* to reflect "the timeframe in which these types of defects most often materialize and thus more fairly allow the pursuit of claims based on such defect." While a different topic entirely, that motivation is the same which drove the Legislature to enact SB 129. The Legislature was motivated to update the statute of limitations for sexual assault claims to reflect the timeframe in which victims are able to report their experiences and thus more fairly allow the pursuit of their claims based on the assaults they experienced. Because SB 129 was justified by a rational legislative purpose, it does not offend due process, even if Defendant did have a vested property right to the statute of limitations defense. The Court thus recommends denying Defendant's motion to dismiss on this ground.

### V.    Whether SB 129 violates the *ex post facto* clauses of the United States and Nevada Constitutions.

Defendant argues that SB 129 violates the *ex post facto* clauses in the United States and Nevada Constitutions because it is effectively a retroactive law that is punitive in nature. (ECF

No. 39 at 15).  Defendant argues that, although the United States Supreme Court has held that the *ex post facto* clause applies only to criminal laws, the Court should reconsider that holding, citing to secondary sources for the proposition that the *ex post facto* clause should apply to all retroactive laws that raise the same concerns that the *ex post facto* clause was designed to address.  (*Id.* at 16-19).  Defendant also argues that, because SB 129 in effect punishes Defendant, or at least "alters the legal rules of evidence, and receives less, or different testimony than the law required at the time of the commission of the offense, in order to convict the offender," it violates the *ex post facto* clause despite its civil nature.  (*Id.* at 19-21).

Plaintiff responds that Defendant's arguments cannot overcome the established United States Supreme Court precedence that only laws imposing criminal punishment can violate the *ex post facto* clause.  (ECF No. 42 at 2-3, 14).  Plaintiff points out that Defendant made this same argument in a case before the District of New Jersey, which argument the New Jersey court rejected.  (*Id.* at 15).  Regarding Defendant's argument that SB 129 is intended to punish, Plaintiff points out that the law, when read in its entirety, in intended to compensate survivors of sexual abuse—a civil remedy—rather than punish abusers.  (*Id.* at 16-17).  That the law references sexual assault is a byproduct of the intent to compensate survivors of sexual assault and not an indicator that it is meant to be punitive.  (*Id.*).  And the mere fact that the Plaintiffs can avail themselves of the common law remedy of punitive damages once their claims are revived does not mean that the law is subject to the *ex post facto* clause.  (*Id.* at 2).  In reply, Defendant rests on his opening motion.  (ECF No. 46 at 5).

The *ex post facto* clause of the United States Constitution provides that "[n]o State shall…pass any…ex post facto Law…" U.S. Const. art. I, § 10, cl. 1.  The Nevada Constitution similarly prohibits *ex post facto* laws.  *State v. Eighth Jud. Dist. Ct.*, 306 P.3d 369, 382 (Nev. 2013).  The United States Supreme Court has expressed that the prohibition against *ex post facto* statutes is limited to laws that are penal in nature.  *See, e.g.*, *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.") (emphasis added) (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798) (opinion of Chase, J.); *id.* at 396

1    (opinion of Paterson, J.); *id.* at 400 (opinion of Iredell, J.)); *U.S. v. Yacoubian*, 24 F.3d 1, 9-10

2    (9th Cir. 1994) ("[t]he *ex post facto* clause of the United States Constitution…only applies to

3    criminal laws."). The Nevada Supreme Court has expressed the same. *State v. Eighth Jud. Dist.*

4    *Ct.*, 306 P.3d at 382 (stating that "[f]or purposes of *ex post facto* analysis, a retrospective law is

5    one that 'changes the legal consequences of acts completed before its effective date'" and that "to

6    be *ex post facto*, a law must both operate retrospectively and disadvantage the person affected by

7    it by either changing the definition of criminal conduct or imposing additional punishment for

8    such conduct.") (emphasis added) (citing *Weaver v. Graham*, 450 U.S. 24, 28, 31 (1981)).

9            Defendant does not dispute the general application of the *ex post facto* clauses. Rather,

10   Defendant—citing scholarly articles—asserts that *Calder* was wrongfully decided in so far as it

11   does not extend the *ex post facto* prohibition to civil laws. But the Court declines Defendant's

12   invitation to challenge *Calder* and its more than two centuries of precedent. Defendant conflates

13   civil and criminal proceedings, and SB 129 does not increase penalties for those convicted of a

14   sexual offense or change evidentiary burdens as applied to those who have not been convicted.

15           With respect to Defendant's reference to punitive damages, the Court notes that the

16   revival statute itself does not reference punitive damages and that the Plaintiffs here seek punitive

17   damages under the common law. Such damages, in the Court's view, do not implicate the *ex post*

18   *facto* clauses. *See Roman Cath. Bishop of Oakland v. Superior Ct.*, 128 Cal.App. 4th 1155, 1165

19   (2005) ("a statute reviving the limitations period for a common law tort cause of action, thereby

20   allowing the plaintiff to seek punitive damages, does not implicate the *ex post facto* doctrine…");

21   *Bernard v. Cosby*, 648 F.Supp.3d 558, 572-73 (D.N.J. 2023) (rejecting Defendant's *ex post facto*

22   argument) (emphasis added).

23           An analysis on the merits does not lead to a different result. To be sure, it is possible for a

24   civil statute to be punitive in effect. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (explaining the

25   process for determining whether a statute is punitive). However, so finding requires the "clearest

26   proof" based on factors including whether the civil sanction: (1) involves an affirmative disability

27   or restraint; (2) has historically been regarded as a punishment; (3) requires a finding of scienter;

28   (4) promotes retribution and deterrence; (5) applies to conduct that already constitutes a crime;

1  (6) may serve an alternative purpose; and (7) appears excessive in relation to the alternative

2  purpose assigned.  *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963); *see Smith*, 538

3  U.S. at 97 (stating that the Supreme Court relies on the *Kennedy* factors in determining whether a

4  statute is criminal in nature).

5      The Court finds the District of New Jersey's analysis on the issue of whether civil fines

6  constitute punishment persuasive here.  *See Bernard*, 648 F.Supp.3d at 572-73.  There, the New

7  Jersey Court analyzed the Third Circuit's decision that the retroactive application of an

8  amendment to the False Claims Act ("FCA") related to treble damages did not violate the *ex post*

9  *facto* clause.  *Id.* (citing *United States ex rel. Int'l Brotherhood of Elec. Workers Loc. Union No.*

10  *98 v. Farfield Co.*, 5 F.4th 315, 336 (3d Cir. 2021)).

11      Of particular relevance, the Third Circuit concluded that the FCA's
12  treble damages and civil fines did not restrict individuals' physical
    liberty as imprisonment would and that monetary penalties have
13  "not historically been viewed as punishment." *Id.* at 336.  Further,
    the Circuit Court found that though the FCA promoted deterrence,
14  "all civil penalties have some deterrent effect," *id.* at 337 (quoting
    *Hudson* [*v. United States*], 522 U.S. [93,] 102 [(1997)]), and that
15  "the separate existence of a criminal statute suggest[ed] that the civil
16  statute serve[d] a different purpose," *id.*

17      *Bernard*, 648 at 573.

18  The New Jersey Court thus found that, applied to the case at hand,

19      potential punitive damages do not restrict Defendant's liberty, []
20  monetary damages are not generally viewed as punishment, and []
    the revival statute serves separate means as compared to the New
21  Jersey Code of Criminal Justice.  Further, while a "monetary penalty
    likely promotes the traditional ends of punishment, retribution, and
22  deterrence, to some degree, that alone is not enough to characterize
    the penalty as penal in nature, rather than civil."  *See Nat'l*
23  *Taxpayers Union v. U.S. Soc. Sec. Admin.*, 302 Fed. Appx. 115, 120-
    21 (3d Cir. 2008) (considering an Eighth Amendment challenge to
24  Section 1140 of the Social Security Act).  The revival statute is only
    of minimal deterrent value, if any, as it applies only to a narrow
25  range of previously extinguished claims arising from past conduct.
26  Further, while its revival of civil recourse, including punitive
    damages, may promote retribution, the Court finds that it does not
27  itself increase penalties beyond those that have already existed.

28      *Id.*

1    The Court finds this analysis persuasive and applies it here.  The Court thus similarly

2    finds that the punitive damages made available under SB 129 do not implicate the *ex post facto*

3    clauses and, for the sake of completeness, that Defendant has failed to provide "clearest proof" to

4    override legislative intent as to the civil nature of SB 129.  The Court thus recommends denying

5    Defendant's motion to dismiss on this ground.

6    **VI.    Whether the Court should sever the Plaintiffs' claims.**

7    Defendant argues that the Plaintiffs and their causes of action have been improperly joined

8    in this single lawsuit contrary to Federal Rule of Civil Procedure 20(a) because each Plaintiff has

9    a distinct and separate claim against the Defendant that does not arise from the same transaction,

10   occurrence, or series of occurrences.  (ECF No. 39 at 21).  Defendant asserts that the only

11   commonality amongst Plaintiffs is that they are represented by the same lawyer.  (*Id.*).

12   Otherwise, their claims are only similar in that they allege generally that Defendant engaged in

13   some type of sexual misconduct against them.  (*Id.*).

14   Plaintiffs respond that their claims are properly brought in a single action because the

15   commonalities of the assaults and Defendant's *modus operandi* mean that trying the cases

16   together would promote judicial economy.  (ECF No. 42 at 15-26).  Plaintiffs point out that, if the

17   present case was filed as ten cases, rather than one, Defendant would have made the same motion

18   to dismiss ten times.  (*Id.* at 28).  This would have resulted in the Court having to address ten

19   different motions regarding the same questions of law, the results of which decisions might be

20   different depending on the judge, despite the arguments and legal issues being identical.  (*Id.*).

21   Plaintiffs analogize to the Southern District of New York's decision in *Ardolf v. Weber* in which

22   the Court permitted four male models to bring a single action against a photographer who

23   sexually assaulted them in a similar fashion.  (*Id.* at 26) (citing *Ardolf v. Weber*, 332 F.R.D. 467

24   (S.D.N.Y. 2019)).

25   Defendant replies that the Plaintiffs' cases are too dissimilar to be tried together.  (ECF

26   No. 46 at 5-6).  Defendant points out that Plaintiffs' reliance on *Ardolf* is misplaced because the

27   sexual assaults occurred close in time (four years) and because the photographer in that case

28   molested each of the male models in the same fashion.  (*Id.* at 5-6).  However, Defendant asserts

1   that here, the assaults took place over ten years and Plaintiffs' claims do not involve an

2   identifiable *modus operandi* because the Plaintiffs each describe different conduct on the part of

3   Defendant. (*Id.*). Defendant adds that, apart from himself, the Plaintiffs cannot identify a single

4   common witness between their ten cases such that, although trying the cases together might result

5   in judicial economy, it would guarantee that Defendant does not receive a fair trial. (*Id.*).

6   Defendant argues that "[n]o jury instruction could cure the incredible prejudice that will result

7   from a joint trial of 10 different women who share nothing in common other than that they all

8   claim that at some point in [the] 1980s or early 1990s, they were sexually abused/assaulted by the

9   Defendant." (*Id.*).

10           Federal Rule of Civil Procedure 20(a)(1) permits the joinder of plaintiffs in one action

11  when "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or

12  arising out of the same transaction, occurrence, or series of transactions or occurrences; and

13  (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P.

14  20(a)(1). The Southern District of New York's decision in *Ardolf v. Weber* stands for the

15  proposition that a defendant's *modus operandi* can tie otherwise distinct incidents together for the

16  purposes of the Rule 20(a)(1) analysis. *See Ardolf v. Weber*, 332 F.R.D. 467, 479-82 (S.D.N.Y.

17  2019). There, a group of male models alleged that the defendant—a prominent photographer—

18  molested each of them individually using a similar method. *Id.* During photoshoots, the

19  photographer would isolate the models; engage in a "breathing exercise"; and then grab or touch

20  them while promising that if the models complied, the photographer would help their careers. *Id.*

21  The court denied the photographer's motion to sever the models' claims, finding that the

22  photographer's *modus operandi* tied their claims together under both the first and second prong of

23  the Rule 20(a)(1) analysis. *Id.*

24           In analyzing the first prong, the court found that the photographer's alleged *modus*

25  *operandi* "is the common thread that logically ties all [the models'] claims." *Id.* The court

26  explained that photographer's "*modus operandi* of molesting male models arises out of a series of

27  the same transactions or occurrences with separate victims, each suffering from a nearly-identical

28  violation of the [Trafficking Victims Protection Act ("TVPA")]." *Id.* In analyzing the second

prong, the court noted that "[a]ll [of the models] raise a single cause of action: a violation of the TVPA…Therefore, at issue for all [of the models] is at least one common question of law: whether [the photographer's] *modus operandi* of fondling [the models'] genitals during private photoshoots constitutes sex trafficking." *Id.* (internal quotations omitted).

District courts in the Ninth Circuit have similarly declined to sever cases involving allegations from multiple plaintiffs about a defendant's similar pattern of sexual assault. In *Phillips v. Berkely Unified School District*, the Northern District of California found both prongs of the Rule 20 analysis satisfied by a defendant's *modus operandi* where the plaintiffs alleged the defendant abused his position at a high school to sexually assault them while they were students. *See Phillips v. Berkeley Unified Sch. Dist.*, No. 22-cv-02605-EMC, 2022 WL 3133848, at *2 (N.D. Cal. Aug. 5, 2022). Similarly, in *Macias v. Lange*, the Northern District of California declined to sever two plaintiffs' claims where the plaintiffs both alleged that their landlord sexually harassed them even though the landlord harassed them at different rental properties and at different times. *See Macias v. Lange*, No. 14-cv-2763-GPC-JMA, 2016 WL 8999479, at *1 (S.D. Cal. Feb. 4, 2016).

Ultimately, joinder under Rule 20(a)(1) "is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). Courts must construe Rule 20(a)(1) "liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *See, e.g.*, *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). On the other hand, even if both Rule 20(a)(1) requirements are met, "a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quotation omitted).

The Court recommends denying Defendant's request to sever the Plaintiffs' actions from one another because Plaintiffs' claims—asserting that Defendant employed a similar *modus*

*operandi* in sexually assaulting them—fulfills both prongs of the Rule 20(a)(1) analysis.  The Southern District of New York's decision in *Ardolf* is persuasive to the Court's conclusion that Defendant's *modus operandi* ties the otherwise distinct sexual assaults together for the purposes of the Rule 20(a)(1) analysis.  Like the male models in *Ardolf* who alleged that the photographer assaulted them in a similar manner, Plaintiffs each allege that Defendant assaulted them in a similar manner by isolating them, drugging them or attempting to drug them, and then sexually assaulting them.

Under the first prong of the analysis, like the *Ardolf* photographer's *modus operandi* of isolating, sexually assaulting, and manipulating the male models, Defendant's *modus operandi* here is the common thread that logically ties all of Plaintiffs' claims.  Defendant's method of sexually assaulting the Plaintiffs—although each separate victims—converts these distinct events into the same series of occurrences because each victim suffered from a nearly identical assault involving isolation and drugs.  Even though Plaintiffs were not in the same exact location and the events did not happen at the same time, Plaintiffs each allege that the encounters occurred in Nevada, that Defendant drugged and subsequently sexually assaulted Plaintiffs, and that Defendant is the common decision-maker responsible for their harm.  Plaintiffs have established the first prong.

Under the second prong of the analysis, like the models' identical single cause of action in *Ardolf*, here, the Plaintiffs each bring the same causes of action for battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. This means that at issue for each of the Plaintiffs is the common question of law: whether Defendant's *modus operandi* of isolating, drugging, and sexually assaulting them constitutes the causes of action they have alleged.  Plaintiffs have established the second prong.

The Court is also persuaded by the fact that other district courts in the Ninth Circuit have reached similar conclusions as the *Ardolf* court.  Both the *Phillips* and *Macias* courts analyzed similar factual patterns as *Ardolf*: multiple plaintiffs alleging that a single defendant sexually assaulted them in a similar way.  And both of those courts found that the cases should proceed together.  This Court—faced with a similar factual pattern—does the same.

1    Ultimately, the Court finds that joinder under Rule 20 would promote judicial economy

2   and reduce inconvenience, delay, and added expense.  While Defendant argues that that Plaintiffs

3   have no overlapping evidence or witnesses, it would be more burdensome to maintain ten

4   separate actions, with separate motion practice, discovery, and trials, all relating to Defendant's

5   same alleged conduct.  And although Defendant argues that trying Plaintiffs' claims together will

6   prejudice him by introducing evidence pertaining to the particular claims of each Plaintiff, this

7   potential prejudice is outweighed by the prejudice to Plaintiffs of trying nearly identical cases ten

8   separate times in front of judges who may rule differently on similar motions.  Given the Court's

9   directive to construe Rule 20(a)(1) liberally to expedite final determinations of disputes and

10   prevent multiple lawsuits, the Court finds that maintaining these claims together would comport

11   with the principles of fairness.  The Court recommends denying Defendant's request to sever.

12

13

14    **IT IS THEREFORE RECOMMENDED** that Defendant's motion to dismiss (ECF No.

15   39) be **granted in part and denied in part.**  It is recommended that Defendant's motion to

16   dismiss be granted in part regarding Plaintiffs' first cause of action raising a common law tort

17   claim for sexual assault.  It is recommended that Defendant's motion to dismiss be denied in all

18   other respects.

19

20    **NOTICE**

21    Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be

22   in writing and filed with the Clerk of the Court within (14) days after service of this Notice. The

23   Supreme Court has held that the courts of appeal may determine that an appeal has been waived

24   due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142

25   (1985), *reh'g denied*, 474 U.S. 1111 (1986).  The Ninth Circuit has also held that (1) failure to

26   file objections within the specified time and (2) failure to properly address and brief the

27   objectionable issues waives the right to appeal the District Court's order and/or appeal factual

28

issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: July 19, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE