**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LISA LOTTE-LUBLIN, *et al.*,

           Plaintiffs,

  vs.

WILLIAM COSBY, JR.,

           Defendant.

Case No.: 2:23-cv-00932-GMN-DJA

**ORDER ADOPTING REPORT AND RECOMMENDATION**

Pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Daniel J. Albregts, (ECF No. 50), recommending[1] that Defendant's Motion to Dismiss, (ECF No. 39), be granted in part and denied in part. Defendant timely filed an Objection to the R&R. (Obj., ECF No. 51). Plaintiffs timely filed a Response. (Obj. Resp., ECF No. 52). For the reasons discussed below, the Court **ADOPTS, in part,** the Magistrate Judge's R&R. Moreover, the Court **DENIES** Defendant's Motion to Dismiss all other claims but will certify to the Nevada Supreme Court the legal issue about Plaintiff Leslie's sexual assault claim.

**I.**     **BACKGROUND**

Plaintiffs Lisa Lotte-Lublin, Lili Bernard, Janice Baker-Kinney, Rebecca Cooper, Janice Dickinson, Linda Kirkpatrick, Angela Leslie, Pam Joy Abeyta, Heidi Thomas, and Jane Fazzari initiated this action against Defendant, William Cosby, Jr., for claims that arise out of sexual assault allegations. (*See generally*, First Am. Compl. ("FAC"), ECF No. 26). Plaintiffs are a group of ten women who allege that, from the early 1970s through the early 1990s, Defendant lured them into an isolated environment, drugged, or attempted to drug them, and then sexually

---

[1] The R&R was issued after Defendant filed a Motion to Dismiss, to which Plaintiffs timely filed a Response (ECF No. 42), and Defendant timely filed a Reply (ECF No. 46).

assaulted them. (*See* FAC ¶¶ 16–20). Each of the alleged sex acts took place in Nevada and arose out of similar events. (*Id.* ¶¶ 18–20). Plaintiffs bring their claims under Nevada Senate Bill 129, which abolished the statute of limitations for civil actions involving sexual assault against victims over 18 years old.[2] Each plaintiff brings claims for sexual assault, battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. (*See generally id.*).

Defendant filed a Motion to Dismiss arguing that (1) sexual assault is not a common law tort in Nevada; (2) Plaintiff Leslie's claims are time barred by the statute of limitations because she does not allege a sexual assault occurred; (3) SB 129 violates the Special Legislation Clause of the Nevada Constitution; (4) SB 129 violates due process under the United States and Nevada constitutions; (5) SB 129 violates the Ex Post Facto Clause of the United States and Nevada constitutions; and (6) in the alternative, that Plaintiffs' claims must be severed into individual lawsuits. (*See generally*, Mot. Dismiss, ECF No. 39).

Magistrate Judge Daniel J. Albregts issued an R&R recommending that the Court grant Defendant's Motion to Dismiss, in part, only as to Plaintiffs' sexual assault claims but deny the same Motion to Dismiss in all other parts.

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a *de novo* determination of those portions to which objections are made. *Id.* The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. R. IB 3-2(b).

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

---

[2] S.B. 129, 2023 Leg., 82nd Sess. (Nev. 2023).

1. which relief can be granted. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Defendant's Objection argues again that (1) Plaintiff Leslie's claims are time barred by the statute of limitations because she does not allege a sexual assault occurred; (2) SB 129 violates the Special Legislation Clause of the Nevada Constitution; (3) SB 129 violates due process under the United States and Nevada constitutions; (4) SB 129 violates the Ex Post Facto Clause of the United States and Nevada constitutions; and (5) in the alternative, that Plaintiffs' claims must be severed into individual lawsuits. (*See generally*, Mot. Dismiss, ECF No. 39). The Court takes up each argument in turn.

### A. Whether SB 129 revives Leslie's claim

Defendant argues that SB 129 does not revive any of Plaintiff Leslie's claims because the alleged forced masturbation does not meet the definition of sexual penetration as defined under NRS 200.364(9), which is necessary to state a claim for sexual assault under NRS 200.366. (Mot. Dismiss 8:20–22). Defendant avers that sexual penetration requires an intrusion

1  into the genital or anal opening. (Mot. Dismiss Resp. 4:1–3).  He disagrees that his penis could
2  sexually intrude Plaintiff's hand. (*Id.* 23–25).  He argues that "'any person's body' refers to the
3  perpetrator's body, not the victim's body" (R&R Obj. 3), and "that a penetration is an intrusion,
4  by way of the perpetrator's body or the perpetrator's use of an object, into the victim's genital
5  or anal opening." (*Id.*)  The Plaintiff's response is in agreement with the Magistrate Judge's
6  recommendation, that "the limiting phrase of 'any part of a person's body' applies to 'any
7  intrusion, however slight.'" (Obj. Resp. 6:20–22; R&R 5:13-25).  And that the phrase
8  "'manipulated or inserted by a person into the genital or anal openings of the body of another'
9  modifies 'object' but not 'any intrusion.'" (Obj. Resp. 6:24–7:2; R&R 5:26–6:7).  The crux of
10  the competing viewpoints is this: Whether a person sexually assaults another, pursuant to the
11  applicable statute (NRS 200.366 and 200.364(9)), when a person allegedly forces another
12  person to masturbate him with her hand against her will?  The Court believes this conduct
13  likely does fall within the definition of Nevada's sexual assault statute.  However, in light of
14  the lack of clear legal authority, the Court will certify the question in a certification order
15  pursuant to Rule 5(c) of the Nevada Rules of Appellate Procedure ("NRAP").
16        Nevada Senate Bill ("SB") 129 removes the statute of limitations for claims that arose
17  out of an underlying sexual assault, meaning a plaintiff must allege that a sexual assault
18  occurred in order for them to bring an action for tort claims, such as battery, under the law.
19  S.B. 129, 2023 Leg., 82nd Sess. (Nev. 2023).  Under NRS 200.366(1)(a), a person is guilty of
20  sexual assault if the person

> [s]ubjects another person to sexual penetration, or forces another person to make a sexual penetration on themselves or another . . . against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of the perpetrator's conduct.

24  The Court finds the decisive language of the statute to be this: "a person is guilty of
25  sexual assault if the person . . . *forces another person* to make a *sexual penetration on*

themselves or *another*." NRS 200.366(1)(a) (emphasis added). NRS 200.364(9) defines "sexual penetration" as "cunnilingus, fellatio, or any intrusion, however slight, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another, including sexual intercourse in its ordinary meaning." Case law makes it clear that the touching of a hand or digit to a genital meets the definition of sexual penetration. In *Rose v. State*, the defendant was guilty of sexual assault where he touched the victim's genitals with his fingers. *See* 163 P.3d 408, 412–16 (Nev. 2007). And similar to the present case, in *Sampson v. State*, the defendant was guilty of sexual assault when the defendant touched the victim's penis and forced the victim to masturbate Defendant's penis with the victim's hand. *See generally* 122 P.3d 1255, 1257–58, 1262 (Nev. 2005).

Here, Defendant allegedly forced Plaintiff Leslie to masturbate his penis with her hand after being drugged. These facts are most analogous to *Sampson* although the Court acknowledges the facts are not identical. It's true that in *Sampson*, unlike here, in addition to a forced masturbation, the defendant also touched the victim's genitals with his hand, an act alone that would constitute sexual penetration. Indeed, the act of a hand touching a genital without consent is sufficient to establish an intrusion of a person's body into the genital of the body of another, which is sufficient to allege sexual penetration occurred. *See Rose*, 163 P.3d at 412–16. Moreover, the sexual assault statute is clear that a perpetrator can force a victim to make a sexual penetration on himself and still be found guilty of sexual assault. It logically follows then that a preparator can be found guilty of sexual assault if they force another to make a sexual penetration—a hand touching a penis—on themselves.

Nevertheless, the *Rose* and *Sampson* convictions involved several acts and the court in these cases never squarely were requested to address whether forced masturbation of another is a crime of sexual assault in Nevada. The Court will submit a certification order to the Nevada Supreme Court pursuant to Rule 5(c) of the Nevada Rules of Appellate Procedure "NRAP," to

provide the highest state court with an opportunity to interpret its own state law, which may take some time.  Thus, the Court DENIES without prejudice Defendant's Motion to Dismiss Plaintiff Leslie's claims so the parties may continue to participate in the discovery process.

### B. Whether SB 129 violates the special legislation clause of the Nevada Constitution

Defendant argues that SB 129 violates the special legislation clause of the Nevada Constitution because the law "serves to punish individuals who have committed or allegedly committed sexual assault as opposed to individuals who have committed any other heinous crime." (Mot. Dismiss 10:11–13).  Plaintiff argues that SB 129 does not violate the special legislation clause because it is "a general law applying equally to all members of the relevant class, namely sexual abuse survivors and perpetrators." (Mot. Dismiss Resp. 25:2–3).  To be clear, Defendant does not argue that the relevant class is "all heinous crimes." (Mot. Dismiss Reply 3:20, ECF No. 46).  Instead, Defendant argues "that the Legislative history of SB 129 reflects that the legislation was designed to revive common law torts for victims of "interpersonal violence." (*Id.* 3:20–22).  And because "SB 129 is not made general to all victims and perpetrators of "interpersonal violence" or even all victims and perpetrators of sexual crimes, Defendant claims that SB 129 was passed in violation of the Nevada Constitution." (R&R 7:2–4).

The Nevada Constitution prohibits the Legislature from passing "local" and "special" laws." Nev. Const. art. 4, § 20.  The Nevada Supreme Court has explained the prohibition against local and special laws under Article 4, Sections 20 and 21 as follows:

> [I]f a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20,[3] such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the cases enumerated in

---

[3] Section 20 enumerates certain cases—which are not applicable here—in which the legislature may not pass local or special laws. Nev. Const. art. 4, § 20.

section 20, then its constitutionality depends upon whether a general law can be made applicable.

*Conservation District v. Beemer*, 45 P.2d 779, 782 (Nev. 1935).

In the R&R, Judge Albregts explained that the Nevada Supreme Court has noted that "a law which applies only to an individual or to a number of individuals selected out of the class to which they belong, is a special and not a general law." *State v. California Min. Co.*, 15 Nev. 234, 249 (1880); (R&R 7:19–21).  In other words, a law is considered "special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of *those who stand in precisely the same relation to the subject of the law*." *City of Fernley v. State Dep't of Tax*, 366 P.3d 699, 708–709 (Nev. 2016) (quoting *Clean Water Coal. v. The M Resort, LLC.*, 255 P.3d 247, 254 (Nev. 2011) (emphasis in *City of Fernley*).  However, even then, special laws are not necessarily unconstitutional. *See Clean Water Coal.*, 255 P.3d at 312.  A special law may be upheld if a general law could not have been made applicable. *Id.*

Here, Defendant argues that victims of "other heinous crimes," "interpersonal violence," or "sexual crimes" may suffer from similar trauma as sexual assault survivors (*See generally* Mot. Dismiss Sec IV.C).  And while the Court does not deny that as being true, it does not believe that by virtue of inflicting similar trauma, perpetrators of "other heinous crimes," "interpersonal violence," or "sexual crimes," stand in precisely the same relation to the subject of SB 129 as required by *City of Fernley*.  Indeed, the Nevada Legislature sought to address the "uniquely intimate" crime of sexual assault, when they created SB 129. (Mot. Dismiss Resp. 17:30).  Although victims of other crimes classified by Defendant may suffer similar trauma and be reluctant to report, "Defendant has not shown how these other crimes are of the 'uniquely intimate' nature such that their victims stand on precisely the same ground as sexual assault victims." (R&R 8:13–14).  Ultimately, Defendant has not met his burden of showing

that victims and perpetrators of these crimes stand on the same ground as victims and perpetrators of sexual assault.

For the sake of completeness, even if Defendant demonstrated that SB 129 is a special law, he did not show that it is unconstitutional.  Defendant had to establish that SB 129 could have been enacted as a general law to show that it is unconstitutional, which he did not do.  In Defendant's Motion to Dismiss, he argues that the Nevada Legislature could have passed a revival statute for "*any* crime victim" to make SB 129 a general law (Mot. Dismiss 11:26).  But in his Reply he argues instead for a smaller applicable class saying SB 129 "could have been made general to all victims and perpetrators of "interpersonal violence" or even to all victims and perpetrators of sexual crimes." (Mot. Dismiss Reply 3:1–2).  Because Defendant has not provided a clear and consistent example of a general law, the Court is unconvinced that the legislature could have created a general law that accomplished the purpose of SB 129.  Thus, the Court DENIES Defendant's dismissal argument because SB 129 does not violate the special legislation clause of the Nevada Constitution.

### C. Whether SB 129 violates the Due Process Clauses of the United States and Nevada Constitutions

Defendant argues that SB 129 deprives him of a vested property right without due process of law in violation of the United States and Nevada Constitutions. (Mot. Dismiss 12:6–14:13).  Defendant urges the Court to find a new property right, namely one in statutes of limitation, despite his acknowledgement that the United States Supreme Court has held that the U.S. Constitution does not grant such a right. (*Id.*)

The Defendant does not have a vested property right in SB 129's statute of limitations under the U.S. Constitution.  The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law.  U.S. Const. amend. XIV, § 1.  But the United States Supreme Court has explicitly concluded

that statutes of limitation do not create property rights. *Campbell v. Holt*, 115 U.S. 620, 629 (1885) ("We are unable to see how a man can be said to have property in the bar of the statute."). Because it is well established that statutes of limitation cannot create a vested property right and are instead deemed "arbitrary enactments," the Court will not hold otherwise. *Id.* at 628.

Moreover, there is no case law to suggest that the Nevada Constitution would consider statutes of limitation to be a property right either. In fact, there is case law that would suggest otherwise.[4] Nevada's Due Process Clause[5] mirrors its federal counterpart, and the Nevada Supreme Court has made it clear that federal law is informative as to the scope of Nevada's procedural due process guarantee. *Dekker/Perich/Sabatini Ltd. v. Eighth Jud. Dist. Ct.*, 495 P.3d 519, 524 (Nev. 2021).

Defendant urges the Court to adopt a novel holding that establishes statutes of limitation as property rights. Defendant asks this Court to rely on a decision by the Utah Supreme Court, *Mitchell v. Roberts*, in which the court held that statutes of limitation are vested rights, and that the Utah legislature lacked the authority to enact legislation to revive a previously time-barred claim similar to SB 129. 469 P. 3d 901, 908 (Utah 2021). The Nevada Supreme Court has not held the same, and there is no reason to believe that it would.[6] Thus, Defendant's Motion to Dismiss arguing SB 129 violates due process is DENIED.

---

[4] *See* R&R 10:5–12:12 for a full discussion explaining why the Court believes the Nevada Supreme Court is unlikely to find a vested right in statute of limitations.

[5] The Nevada Constitution states that "[a]ll men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness." Nev. Const. art. 1, § 1.

[6] It is not common for Nevada to rely upon Utah to answer questions of law. Historically, Nevada courts look to California law for guidance. *Zurich Am. Ins. Co. v. Aspen Specialty Ins. Co.*, 2021 WL 3489713 *3 (D. Nev. Aug. 6, 2021); *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004). Additionally, Utah is not in the Ninth Circuit.

### D. Whether SB 129 violates the *Ex Post Facto* clauses of the United States and Nevada Constitutions

Defendant argues that SB 129 violates the *Ex Post Facto* clauses of the United States and Nevada Constitutions because it is a retroactive law that is punitive in nature. (Mot. to Dismiss 15:17–16:2).

First, the Court takes up Defendant's retroactive argument. The *Ex Post Facto* clauses prohibit both Congress and the states from passing laws that apply retroactively. U.S. Const. art. 1, § 9, cl. 3; U.S. Const. art 1, § 10, cl. 1. The Nevada Constitution also prohibits these laws. *See* Nevada Const., art. 1, § 15. *State v. Eighth Jud. Dist. Ct.*, 306 P.3d 369, 382 (Nev. 2013). Both the United States Supreme Court and the Nevada Supreme Court have held that the *Ex Post Facto* clauses of their respective constitutions apply only to retroactive criminal laws. *Calder v. Bull*, 3 U.S. 386, 390 (1798); *State v. Eighth Jud. Dist. Ct.*, 306 P.3d at 382.

SB 129 removes the statute of limitations for civil tort claims that arise out of a sexual assault. To be clear, "SB 129 does not increase penalties for those convicted of a sexual offense or change evidentiary burdens as applied to those who have not been convicted." (R&R 14:13–14). As such, the precedent is clear that the *Ex Post Facto* clauses of the United States and Nevada constitutions do not apply to SB 129 because it is a *civil* law.

Second, the Court takes up Defendant's punitive argument. It is possible for a civil law to be punitive in effect violating *Ex Post Facto*. *Smith v. Doe*, 538 U.S. 84, 92 (2003). The Court notes that punitive damages are not mentioned anywhere in SB 129, nor do Plaintiffs seek punitive damages under SB 129. They instead seek punitive damages under common law. Such damages do not implicate the *Ex Post Facto* clauses. *See Roman Cath. Bishop of Oakland v. Superior Ct.*, 128 Cal. App. 4th 1155, 1165 (Cal. 2005) ("a statute reviving the limitations period for a common law tort cause of action, thereby allowing the plaintiff to seek punitive damages, does not implicate the *Ex Post Facto* doctrine . . ."); *see also Bernard v. Cosby*, 648

F.Supp.3d 558, 572–73 (D.N.J. 2023) (rejecting Defendant's *Ex Post Facto* argument) (emphasis added).

But even if the damages sought here implicate the *Ex Post Facto* clauses, Defendant's punitive argument still fails. To determine whether a civil law is punitive, courts employ a two-step analysis looking at the legislature's intent. In step one, a court must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997). If the intention of the legislature was to impose punishment, the inquiry ends. *Smith*, 538 U.S. at 92. But, if the "intention was to enact a regulatory scheme that is civil and nonpunitive," courts must move on to step two to "examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 248–49, (1980)). Such a finding requires the "clearest proof" based on factors including whether the civil sanction: (1) involves an affirmative disability or restraint; (2) has historically been regarded as a punishment; (3) requires a finding of scienter; (4) promotes retribution and deterrence; (5) applies to conduct that already constitutes a crime; (6) may serve an alternative purpose; and (7) appears excessive in relation to the alternative purpose assigned. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963); *see Smith*, 538 U.S. at 97 (stating that the Supreme Court relies on the *Kennedy* factors in determining whether a statute is criminal in nature). The party alleging the *Ex Post Facto* violation bears the burden to provide the clearest proof. *Id*.

Here, after reading SB 129 in its entirety, along with the legislative testimony made available, the Court concludes that it was not enacted to punish perpetrators of sexual assault, but instead to compensate survivors and foster healing. Senator Lisa Krasner, who introduced and sponsored the law, explained: "Currently the law in this area, that statute of limitations is two years. Two years isn't enough time for a victim of rape, sexual assault to heal, to

understand what happened to them to gain the strength and courage to come forward."[7] Similarly, Senator Jeff Stone explained: "This is healing. . . A lot of this is suppressed for many years, and a two-year statute of limitations does not suffice. Bringing this forward gives victims justice and the resources they need to get the appropriate health care."[8] So because step one of the analysis does not establish that SB 129 is punitive, the Court must move on to step two and apply the *Kennedy v. Mendoza-Martinez* factors.

First, Defendant concedes that the penalty does not involve an "affirmative disability or restraint." (Mot. Dismiss 21:11–13). Second, the Supreme Court has stated that monetary penalties have not "historically been viewed as punishment." *Hudson v. United States*, 522 U.S. 93, 104 (1997). Third, a finding of scienter is required as the underlying offense in SB 129 is criminal sexual assault. However, the *Smith* court made clear that this factor can be of little weight in the overall balancing test. 538 U.S. at 87. Fourth, the mere presence of retribution and deterrence alone is not enough to characterize SB 129 as punitive because deterrence can serve civil goals. *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 302 F. App'x 115, 120–21 (3d Cir. 2008). Further, while SB 129's "revival of civil recourse, including punitive damages, may promote retribution, the Court finds that it does not itself increase penalties beyond those that have already existed." *Bernard*, 648 F.Supp.3d at 573. Fifth, even if the conduct for which punitive damages may be imposed is also criminal, that alone is insufficient to render SB 129 punitive. *Hudson*, 522 U.S. at 105. Sixth, the separate existence of a criminal statute suggests that SB 129 serves a different purpose. *Bernard*, 648 F.Supp.3d at 573. Moreover, SB 129 drafters and witnesses made clear that a primary purpose of the law was to compensate survivors so that they might heal from the trauma they have endured. (Mot. Dismiss Resp.

---

[7] Josh Meny, *Sen. Krasner introduces bill to remove statute of limitation on civil sexual assault cases*," KTVN-TV, Feb. 21, 2023, https://www.2news.com/townnews/parliament/sen-krasner-introduces-bill-to-remove-statute-of-limitation15on-civil-sexual-assaultcases/article_8091aa80-b262-11ed-a015-1392181bde20.html.

[8] *February 21, 2023, Minutes of the Senate Committee on Judiciary*, 2023 Leg., 82nd Sess. 9 (Nev. 2023) (statement of Sen. Jeff Stone).

16:18–19:4).  And seventh, punitive damages are available under the common law, regardless of whether SB 129 was enacted or not.  SB 129 does not create a remedy of punitive damages, so the Court does not find them to be in excess of the alternative purpose assigned to the law.  Thus, out of the seven *Mendoza–Martinez* criteria, the Court distills little support for the proposition that SB 129 is too punitive.

In sum, there is very little showing, to say nothing of the "clearest proof" required by Defendant, that SB 129 was intended as a criminal statute or is so punitive as to negate its nonpunitive purpose.  The Court agrees with Plaintiffs that "the legislative intent was to afford victims of sexual assault the ability to seek redress in civil court for the trauma caused by sexual assault." (Mot. Dismiss Resp. 22:6–7).  More importantly, Defendant has not met his burden.  He has not presented any persuasive evidence suggesting a punitive purpose in SB 129 or that its punitive effect negates its non-punitive purpose.  Thus, Defendant's Motion to Dismiss arguing SB 129 violates *Ex Post Facto* is DENIED.

### E. Whether the Court should sever Plaintiffs' claims

Defendant argues that "Plaintiffs and their causes of actions have been improperly joined in a single lawsuit contrary to Federal Rule of Civil Procedure 20(a) where each Plaintiff has a distinct and separate claim against the Defendant that does not arise from the same transaction, occurrence or series of occurrences." (Mot. Dismiss 21:19–22).  Defendant maintains that the only commonality among the claims is that they are all represented by the same attorney. (*Id.* 21:24–26).  Plaintiffs disagree and argue "that the commonalities of the assaults and Cosby's *modus operandi* render his serial rape of Plaintiffs part of a series of transactions or occurrences warranting joinder of the claims." (Mot. Dismiss Resp. 25:13–15).

Federal Rule of Civil Procedure 20(a)(1) permits the joinder of plaintiffs in one action when "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

1  (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P.
2  20(a)(1).  Joinder under Rule 20(a)(1) "is designed to promote judicial economy, and reduce
3  inconvenience, delay, and added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.
4  1997).  Courts must construe Rule 20(a)(1) "liberally in order to promote trial convenience and
5  to expedite the final determination of disputes, thereby preventing multiple lawsuits." *See, e.g.*,
6  *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977).
7  "[T]he impulse is toward entertaining the broadest possible scope of action consistent with
8  fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United*
9  *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

10  As to prong one of Rule 20(a)(1), Plaintiffs argue that Defendant's *modus operandi* ties
11  each claim together and trying the claims in a single case would promote judicial economy.
12  (Mot. Dismiss Resp. 25:13–26:10).  Other courts in the Ninth Circuit have declined to sever
13  similar cases because they found that the defendants' *modus operandi* satisfied prong one of the
14  analysis.  In his R&R, Magistrate Judge Albregts draws attention to two such cases.  In *Phillips*
15  *v. Berkely Unified School District*, a court in the Northern District of California found both
16  prongs of the Rule 20 analysis satisfied by a defendant's *modus operandi* when the plaintiffs
17  alleged that the defendant abused his position at a high school to sexually assault them while
18  they were students. No. 22-cv-02605-EMC, 2022 WL 3133848, at *2 (N.D. Cal. Aug. 5, 2022).
19  Similarly, in *Macias v. Lange*, a court in the Southern District of California declined to sever
20  two plaintiffs' claims when the plaintiffs both alleged that their landlord sexually harassed them
21  even though the landlord harassed them at different rental properties and at different times. No.
22  14-cv-2763-GPC-JMA, 2016 WL 8999479, at *1 (S.D. Cal. Feb. 4, 2016).

23  Here, Plaintiffs each allege that Defendant assaulted them in a similar manner by
24  isolating them, drugging them or attempting to drug them, and then sexually assaulting them.
25  They argue that this pattern establishes a *modus operandi* even though each alleged sexual

1  assault occurred in different places, spanning different decades. (Mot. Dismiss Resp. 25:9–15).
2  The Court agrees with Judge Albregts that "Defendant's method of sexually assaulting the
3  Plaintiffs—although each separate victims—converts these distinct events into the same series
4  of occurrences because each victim suffered from a nearly identical assault involving isolation
5  and drugs." (R&R 19:10–13).  And "[e]ven though Plaintiffs were not in the same exact
6  location and the events did not happen at the same time, Plaintiffs each allege that the
7  encounters occurred in Nevada, that Defendant drugged and subsequently sexually assaulted
8  Plaintiffs, and that Defendant is the common decision-maker responsible for their harm." (*Id.*
9  19:13–16).  Thus, Plaintiffs establish prong one.

10   As to prong two of Rule 20(a)(1), Plaintiffs argue that their claims share common
11  questions of law because each plaintiff brings the same causes of action—sexual assault
12  (dismissed above), battery, assault, intentional infliction of emotional distress, negligent
13  infliction of emotional distress, and false imprisonment—against the same defendant.  (Obj.
14  Resp. 12:8–21).  Defendant maintains that the claims do not involve common questions of law
15  and fact because the "court must give each claim 'individualized attentions.'" (Mot. Dismiss
16  22:2–14) (quoting *S. Nev. Confederation of Clubs v. Las Vegas Metro. Police Dep't*, No. 2:12-
17  cv-01093-APG-VCF, at *7 (D. Nev. July 26, 2013)).  In *South Nevada Confederation of Clubs*
18  *v. Las Vegas Metropolitan Police Department*, the Court held that prong two was not met when
19  the plaintiffs did not allege a "pattern. . . shared among the defendants," nor did they allege the
20  same legal issues. *S. Nev. Confederation of Clubs*, No. 2:12-cv-01093-APG-VCF, at *7 (noting
21  plaintiffs alleged different claims against different defendants).

22   Here, the present facts are distinguishable from those found in *South Nevada*
23  *Confederation of Clubs*.  Plaintiffs in this case establish a pattern by bringing the exact same
24  causes of action against the exact same Defendant.  Therefore, "at issue for each of the
25  Plaintiffs is the common question of law: whether Defendant's *modus operandi* of isolating,

drugging, and sexually assaulting them constitutes the causes of action they have alleged." (R&R 19:21–23). Thus, Plaintiffs meet the second prong.

But, even if both Rule 20(a)(1) requirements are met, "a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quotation omitted). Defendant argues that Plaintiffs' claims lack overlapping evidence and shared witnesses. (Mot. Dismiss Reply 6:17–18). And while Defendant concedes that keeping the claims together may promote judicial economy, he does not believe he would receive a fair trial unless the Plaintiffs' claims are severed. (Mot. Dismiss Reply 6:21–22). Plaintiffs, on the other hand, argue that they would not receive a fair outcome if they each had to litigate separately because "the results of the motions may be disparate, despite the arguments and legal issues being identical." (Mot. Dismiss Resp. 28:10–11).

Because the Court must construe Rule 20(a)(1) liberally to promote trial convenience and to expedite the final determination of disputes, it finds that severing Plaintiffs' claims would not comport with the spirit of the rule. Moreover, severing this one case into ten cases would not promote judicial economy because the district would have to review ten sets of nearly identical court filings, Defendant would have to be deposed ten separate times, and if each case were to go to trial, it would result in ten separate trials with ten different sets of jurors, and potentially different judges. Thus, Defendant's request to sever this lawsuit into ten individual ones is DENIED.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 50), is **ADOPTED**, in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 39) is **GRANTED, in part**.

**IT IS FURTHER ORDERED** that the Court will issue a separate order certifying the question related to Plaintiff Leslie's sexual assault claim to the Nevada Supreme Court. Parties shall have until September 30, 2024 to submit a brief, of no more than ten pages in length, recommending the contents of the certification order pursuant to Rule 5(c) of the Nevada Rules of Appellate Procedure "NRAP."

Dated this __16__ day of September, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court